IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff/Respondent, ) | |
| ) | Criminal Case No. CR-17-00075-RAW |
| v. ) | |
| ) | Civil Case No. CV-21-00216-RAW |
| FLOYD PRESTON MILLER, III, ) | |
| ) | |
| Defendant/Movant. ) | |

# ORDER

Now before the court is the *pro se* motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence ("§ 2255 motion") filed by Defendant Floyd Preston Miller, III. [CR Doc. 83; CV Doc. 1]. The Government filed a response in opposition to Defendant's § 2255 motion. [CR Doc. 88]. Defendant filed a supplement to his § 2255 motion. [CR Doc. 89]. Defendant also filed a reply. [CR Doc. 90].

The Tenth Circuit Court of Appeals, in an order and judgment filed on July 29, 2020, provided the following summary of this case:

> In November 2015, Miller—who at the time was 36 years old—"met" a girl in an internet chat room and eventually exchanged sexual messages and pictures with her. Two weeks later, the girl informed Miller that she was 15 years old. In the next several months, Miller sent the girl pictures of his penis and videos of him touching himself. He also asked her to send him pictures of her genitals and videos of her masturbating. She complied.
>
> Miller was eventually charged with violating Title 18, U.S. Code, section 2422(b). This crime includes four elements: (1) use of a means of interstate commerce; to (2) knowingly; (3) persuade, induce, entice, or coerce a minor; to (4) engage in sexual activity for which any person can be charged with a crime. 18 U.S.C. § 2422(b). According to the indictment, the "crime[s]" with which Miller could have been charged included Title 21, Oklahoma Statutes, section 1123 for lewd or indecent proposals or acts with a child; and Title 21, Oklahoma Statutes, section 1021.2 for procuring participation of a minor in child pornography.
>
> In its instructions to the jury at trial, the district court discussed relevant criminal offenses that could satisfy the fourth element of Title 18, U.S. Code, section 2422(b). It first discussed the two Oklahoma statutes listed in the indictment.

> The court instructed the jury that Title 21, Oklahoma Statutes, section 1021.1 makes it a crime to "procure or cause the participation of any minor . . . in any child pornography." ROA at 27. It also noted that Title 21, Oklahoma Statutes, section 1123(A)(5)(c) makes it a crime to "cause, expose, force or require a child to look upon the body or private parts of another person." *Id*.
>
> The court then discussed two federal statutes—not listed in the indictment—that could satisfy the fourth element of Title 18, U.S. Code, section 2422(b). It instructed the jury that Title 18, U.S. Code, section 2427 makes it a crime to produce child pornography. *Id*. at 27–28. It then noted that Title 18, U.S. Code, section 2251(a) makes it a crime to "employ, use, persuade, induce, or entice any minor to engage in sexually explicit conduct for the purpose of producing [a] visual depiction of such conduct." *Id*. at 28.
>
> The jury convicted Miller for violating section 2422(b).

*United States v. Miller*, 822 Fed.Appx. 777, 778 (10th Cir. July 29, 2020) (unpublished). [CR Doc. 81]. Defendant was represented by two attorneys at trial: William P. Widell, Jr., Assistant Federal Public Defender, and Meredith Curnutte, *pro bono* counsel. [CR Docs. 42 and 44].

The United States Probation Office prepared a presentence investigation report ("PSR"). The PSR noted that the minimum term of imprisonment on the count was 10 years and the maximum term was life. PSR at ¶ 45. The PSR further noted that, based upon a total offense level of 36 and a criminal history category of I, the guideline imprisonment range was 188 months to 235 months. *Id*. at ¶ 46. Neither party objected to the PSR. Counsel for Defendant filed a motion for variance, which the Government opposed. [CR Docs. 53 and 54]. The Government urged the court to sentence Defendant "to a sentence within [the] advisory guideline range and avoid unwarranted sentencing disparities and sentence him to the high end of that range." [CR Doc. 54 at 5].

Defendant appeared with counsel for sentencing on November 20, 2018. [CR Doc. 60]. There were no objections to the PSR, and the court found the PSR would form the factual basis for the court's sentence. [CR Doc. 60 at 1; CR Doc. 71 at 2]. Counsel persuasively argued the motion for variance at the sentencing hearing, and the undersigned granted the motion in part. [CR Doc. 71 at 21]. Defendant was ultimately sentenced to a term of 164 months of imprisonment. [CR Doc. 60 at 1]. Judgment was entered on November 30, 2018. [CR Doc. 61]. A notice of appeal was filed on December 7, 2018. [CR Doc. 64].

Defendant asserted on appeal that the "jury instruction constructively amended his indictment by describing the two federal statutes, in addition to the two Oklahoma statutes listed in the indictment, when discussing whether [Defendant]'s conduct was 'criminal.'" *Miller*, 822 Fed.Appx. at 778. The alleged constructive amendment, according to the Defendant, "expanded the basis for which he could be convicted at the close of trial, and thus denied him the opportunity to present a defense." *Id*. The Circuit, however, held that the constructive amendment claim did not warrant reversal, explaining that "[e]ven assuming the trial court's jury instruction constructively amended the original indictment, [Defendant] has not shown it affected his substantial rights." *Id*. at 779. The Circuit noted that, "[b]ecause [Defendant] cannot show how his conceded facts apply differently to the federal statutes than they do to the Oklahoma variants, he has not established that the federal statutes mentioned in the contested jury instructions broadened his chances of conviction." *Id*. at 780. The district court's judgment was affirmed and Defendant's conviction was upheld. *Id*.

Defendant asserts four grounds within his timely § 2255 motion. Defendant claims in Ground One that "[h]e could not have been charged with a crime in Oklahoma." [CR Doc. 83 at 4]. In Ground Two, Defendant contends "[t]he indictment is vague and creates an opportunity for double jeopardy prosecutions." *Id*. at 5. In Ground Three, Defendant sets forth claims of ineffective assistance of counsel. *Id*. at 6-7, 14. In Ground Four, Defendant alleges that "the court broadened the charges and attempted to correct the mistakes made in Ground Two, herein," and that the "Tenth Circuit failed to follow Supreme Court precedent when it examined the broadening of the charge by the court in its instructions." *Id*. at 8.

### Ground One

Defendant argues in Ground One that "[t]here was no person who lived in Oklahoma who was a victim of what transpired between Nevada resident [victim] and the [Defendant]." [CR Doc. 83 at 4]. Defendant alleges in part that "no one in Oklahoma suffered harm because of [Defendant]'s messages via internet to a person in Nevada," that the "alleged victim's mother contacted Las Vegas police (not Oklahoma)," and that the "alleged victim had no contact with Oklahoma." *Id*. Defendant ultimately concludes that he could not have been charged with a crime in Oklahoma.

3

Defendant cites no authority in direct support of his argument, and the Government does not address the merits. Instead, the Government contends that, because Ground One was not raised on direct appeal, the ground is procedurally barred. [CR Doc. 88 at 7]. The court agrees. "A § 2255 motion is not available to test the legality of a matter which should have been raised on direct appeal." *United States v. Cox*, 83 F.3d 336, 341 (10th Cir. 1996) (citing *United States v. Warner*, 23 F.3d 287, 291 (10th Cir. 1994)). "When a defendant fails to raise an issue on direct appeal, he is barred from raising the issue in a § 2255 proceeding, unless he establishes either cause excusing the procedural default and prejudice resulting from the error or a fundamental miscarriage of justice if the claim is not considered." *Id.* Defendant has failed to establish cause and prejudice sufficient to overcome the procedural default rule. Moreover, Defendant has failed to demonstrate actual innocence, meaning he has failed to support a claim for miscarriage of justice.

Defendant's Ground One also fails on the merits. The court is mindful that Defendant was convicted for violating 18 U.S.C. § 2422(b). The Tenth Circuit has previously noted that "[c]oercion and enticement in violation of 18 U.S.C. § 2422 is a continuing offense under 18 U.S.C. § 3237 . . . ." *See United States v. Byrne,* 171 F.3d 1231, 1235 n. 2 (10th Cir. 1999). Section 3237(a) provides, in relevant part, that "any offense . . . begun in one district and completed in another, or committed in more than one district, *may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed*." 18 U.S.C. § 3237(a) (emphasis added); *see also United States v. Boyer,* Criminal No. 4:08cr1DPJ-JCS, 2008 WL 4104482, at *1 (S.D. Miss. Aug. 28, 2008) ("[T]he Court agrees with the Government's contention that venue for a charge under Section 2422(b) can exist in more than one district pursuant to 18 U.S.C. § 3237(a) . . . ."); *United States v. Wohlman*, No. 09-CR-47-LRR, 2009 WL 3415796, at *1 (N.D. Iowa Oct. 22, 2009) (concluding that venue for a charge under Section 2422(b) was proper in the Northern District of Iowa because defendant was in the district when he initiated internet conversations with agent).

### Ground Two

Defendant claims in Ground Two that "[t]he indictment is vague and creates an opportunity for double jeopardy prosecutions." *Id*. at 5. Defendant notes that the indictment

4

relied upon two Oklahoma statutes to support the Government's charge, and he now complains that it did not single out any particular subsection(s). *Id*. The Government does not address the merits. The Government contends Ground Two is procedurally barred for not being raised on direct appeal, and again, the court agrees.

Still, Defendant's Ground Two also fails on the merits. "An indictment is sufficient if it sets forth the elements of the offense charged, puts the defendant on fair notice of the charges against which he must defend, and enables the defendant to assert a double jeopardy defense." *United States v. Dashney*, 117 F.3d 1197, 1205 (10th Cir. 1997). Defendant was indicted for violating 18 U.S.C. § 2422(b). The crime includes four elements: (1) use of a means of interstate commerce; to (2) knowingly; (3) persuade, induce, entice, or coerce a minor; to (4) engage in sexual activity for which any person can be charged with a crime. The indictment showed the crimes with which Defendant could have been charged included two Oklahoma criminal statutes, more particularly 21 O.S. § 1123, for lewd or indecent proposals or acts with a child, and 21 O.S. § 1021.2, for procuring participation of a minor in child pornography.

Defendant now claims the indictment is vague because it does not cite specific *subsections* of the underlying criminal statutes. He cites no specific authority in support of his arguments. In a well-reasoned order, a similar argument relating to underlying Kansas criminal statutes was rejected by a Kansas district court. *See United States v. Williamson*, Criminal Action No. 13-20011-01-KHV, 2020 WL 1433492, at *2-3 (D. Kan. Mar. 24, 2020). Like the defendant in *Williamson*, Defendant in the instant case has not alleged sufficient facts to establish a lack of specificity in the indictment prejudiced his defense. And, as noted by Judge Vratil in *Williamson*, the trial record in the case at hand affords Defendant adequate specificity to raise a double jeopardy defense to the extent that a future prosecution is theoretically possible. *Id*. at *3.

### Ground Three

Defendant raises ineffective assistance of counsel claims in Ground Three. First, Defendant asserts that his counsel was ineffective, having "failed to argue the improper inclusions that [Defendant] could be prosecuted under Oklahoma Title 21, Sections 1021.2 and 1123 without a corpus delecti." [CR Doc. 83 at 6]. Defendant claims "[i]f counsel had prepared,

5

he would have known a victim who suffered in Oklahoma was necessary," and that "[t]he crime occurred to a victim in Nevada and case was investigated by Las Vegas police." *Id*. In addition, Defendant claims counsel "ought to have [subpoenaed] a qualified witness employed by Omegle to describe the procedures Omegle employees [sic] to segregate minors and adult users." *Id*. at 7.

The Government claims in response that Defendant cannot establish ineffective assistance of counsel. [CR Doc. 88 at 9]. The Government describes Defendant's first claim as a "conclusory allegation of ineffectiveness, which is unsupported by either fact or legal authority" and "insufficient to establish ineffective assistance." *Id*. at 11. The Government points to the indictment and trial transcript, asserting that "[a]t the time of the offense of conviction, Defendant was a resident within the confines of the eastern judicial district of Oklahoma," and thus "jurisdiction and subsequent prosecution before the district court was proper." *Id*. The Government contends that Mr. Widell and Ms. Curnette "were aware the 'case' had been investigated by Las Vegas police," and that the Las Vegas detective was cross-examined by counsel at trial. *Id*. at 11-12. The Government also points to 18 U.S.C. § 2422(b), noting that "[t]he jury found the facts presented established Defendant had used a means of interstate commerce—his computer—to knowingly persuade, induce, entice or coerce a minor to engage in sexual activity." *Id*. at 12.

As to Defendant's second claim (that counsel should have subpoenaed a qualified witness employed by Omegle to potentially discredit the victim), the Government reminds the court that "[t]he inner-workings of the Omegle application were not an issue on appeal," and "therefore any such claim is procedurally barred here." *Id*. The Government also contends that inasmuch as Defendant is alleging either of his attorneys were ineffective, the effort is without merit. *Id*. The Government notes that "[a]t the trial level, it was established the charged conduct occurred on the Kik application, not on the Omegle application," and further, that "there was extensive testimony from a number of witnesses regarding the Omegle matching process sufficient to establish" how the website did not segregate minors and adult users. *Id*. The Government alleges that "[t]he record in this case clearly establishes Mr. Widell and Ms. Curnette acted in a reasonable manner," and that "choosing to forego calling an expert on information technology to potentially discredit the victim" was a professionally reasonable decision. *Id*. at 12-13.

The Sixth Amendment gives criminal defendants the right to effective assistance of counsel, and claims of ineffective assistance of counsel are governed by the familiar two-part test announced in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under the *Strickland v. Washington* standard, Defendant must demonstrate that (1) the representation was deficient because it fell below an objective standard of reasonableness under prevailing professional norms; and (2) the deficient performance prejudiced the defense. *Id.*, 466 U.S. at 687. Regarding the first prong, the *Strickland* Court provided the following guidance:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.

*Id.* at 689 (internal citation omitted). With respect to the second prong, the Supreme Court explained a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. This court "may address the performance and prejudice components in any order, but need not address both if [Defendant] fails to make a sufficient showing of one." *Foster v. Ward*, 182 F.3d 1177, 1184 (10th Cir. 1999). "Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 599 U.S. 356, 371, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010). "*Strickland* does not guarantee perfect representation, only a reasonably competent attorney." *Harrington v. Richter*, 562 U.S. 86, 110 (2011) (citations and internal quotation marks omitted).

The victim was 16 years old when she testified at trial. [CR Doc. 79 at 28]. At that time, she was living with her parents, two sisters, one brother and her grandmother in Las Vegas, Nevada. *Id*. at 29. She testified that she was 14 years old when she met Defendant on Omegle, a website. *Id*. at 28-35. She claimed she did not fill out forms or sign up for Omegle, but thought she may have checked a box stating she was 15 when she entered the website. *Id*. at 30-32. At some point while chatting with Defendant on Omegle, the victim was asked if she wanted to go to Kik to keep the conversation going. *Id*. at 35. Defendant, according to the victim, explained

how to set up a Kik account. *Id*. at 35-36. The victim set up a Kik account, and Defendant and victim moved the conversation from Omegle to Kik. *Id*. at 34-35. Later conversations between Defendant and the victim were also on Kik. Defendant and the victim talked about different things, including movies, video games, and music. *Id*. at 36-37. She also testified that she talked about school with Defendant, such as "how [her] classes were going and if [she] was bored in class and stuff like that." *Id*. at 37. She testified that she talked with Defendant about history being her favorite class. *Id*. at 37-38. She was asked if she ever talked to Defendant via Kik on her phone at school, and whether she sent Defendant videos while she was at school, and she answered both questions in the affirmative. *Id*. at 46. The victim was specifically asked: "What kind of videos did you send this person while you were at school?" *Id*. She replied, "Just like a picture of me waving hi." *Id*. The victim exchanged sexual messages and pictures with Defendant when she was not in school, and the victim told Defendant that she was 15 years old (though she was actually 14). *Id*. at 38-40, 42-45. Defendant sent the victim pictures of his penis and videos of him touching himself. *Id*. at 44, 109. Defendant also asked her to send him pictures of her genitals and videos of her masturbating, and she complied. *Id*. at 48-49.

At trial, Detective Mark Hoyt testified that he was assigned to the Las Vegas Internet Crimes Against Children Task Force, and that he was "a deputized marshal when it comes to federal cases . . . and state cases involving internet crimes against children and human trafficking." *Id*. at 69-70. Detective Hoyt interviewed the victim's mother and the victim and conducted a forensic examination on the victim's cell phone. *Id*. at 71-74, 82. The authorities were able to determine the identity of the Defendant even though he used a VPN, or virtual private network, that masked his IP address. *Id*. at 82-85, 110-11. Detective Hoyt testified that he traveled to Oklahoma to conduct an interview with Defendant. *Id*. at 88, 98-99. Videos from the victim's phone were played for the jury.

Defendant also testified at trial. He explained that he used Omegle "to meet and chat and talk with like-minded people about sex." *Id*. at 132. Defendant stated at trial that Omegle segregated adult and minor users (the users type in their interests and check a box). *Id*. at 132-33. His attorney asked, "is it possible to be connected with somebody under 18 if you've checked 18 plus?" and Defendant replied, "No." *Id*. at 134. Defendant was also asked: "While you were on Omegle did you have any reason to believe that [the victim] was under the age of

18?" *Id*. at 140.  He replied, "No." *Id*.  He acknowledged that the conversation was moved from Omegle to Kik.  *Id*. at 139-141.  Defendant was asked, when exchanging videos initially on Kik, "was there anything about [the victim's] physical appearances that led you to believe that she had to be under the age of 18?" and he replied, "No." *Id*. at 141.  His testimony indicated that the victim at some point told him she was 15 years old, and that he told the FBI and Detective Hoyt during the investigation that the victim stated her age was 15.  *Id*. at 143-44.  His attorney asked, "Were you concerned that she was actually 15?" and Defendant replied, "No." *Id*. at 144.  He claimed that he believed the victim's statement about her age was part of adult role-playing, or more particularly, "that she was in a role for high school."  [CR Doc. 79 at 144; CR Doc. 90 at 4].  He further claimed that he did not know her actual age until early February (a few months after meeting on Omegle) when the victim's sister had taken possession of the victim's phone and informed him that she was 14.  [CR Doc. 79 at 144].

Still, FBI Special Agent Jonathan Clark testified that he interviewed the Defendant twice.  He was asked the following question about his first interview with the Defendant: "Did [Defendant] discuss with you Omegle and believing that this woman was 18-years-old at any time?" *Id*. at 168.  Special Agent Clark responded, "He did not." *Id*.  He was also asked the following question about his second interview with the Defendant: "And can you tell me during that interview was there any discussion about him believing that this person that he was talking to was 18-years-old?" *Id*.  Special Agent Clerk replied, "No. He told me that she was 15." *Id*.  Moreover, Detective Hoyt was specifically asked, "During the course of the examination of [the victim]'s phone, did you find any texts that she had sent that contained videos of her in a classroom waving?" *Id*. at 95-96.  Detective Hoyt replied, "Yes, I did." *Id*. at 96.  Detective Hoyt's testimony and the evidence from the phone, along with the victim's testimony that she occasionally communicated with Defendant while in class, and Special Agent Clark's testimony about Defendant's interviews, undermine Defendant's claims at trial that he thought the victim was over 18 years of age.

Clearly, Defendant's first allegation of ineffectiveness is conclusory, and unsupported by either fact or legal authority.  As explained above, venue for a charge under Section 2422(b) was proper in this court because Defendant was in this district when he was communicating with the victim.  As to Defendant's second ineffective assistance claim, Defendant has failed to show that

9

counsel was deficient for failing to call an expert regarding the Omegle matching process. As noted by the Government, it was established at trial that the charged conduct occurred on the Kik application, not on the Omegle application. Further, Defendant's speculation that an expert witness would have "put [the victim]'s credibility into question" is not sufficient to establish ineffective assistance of counsel.

Defendant has not established that his counsel's performance fell below an objective standard of reasonableness. He has also failed to show that, but for counsel's alleged errors, the result of the proceeding would have been different. His claims of ineffective assistance of counsel fail both prongs of the *Strickland* standard and must be denied.

### **Ground Four**

Defendant argues in Ground Four that "[t]he court broadened the charges and attempted to correct the mistakes made in Ground Two, herein," and that "[t]he Tenth Circuit failed to follow Supreme Court precedent when it examined the broadening of the charge by the court in its instructions." [CR Doc. 83 at 8]. Defendant contends that "[i]t was likely a jury was convinced to deliberate on the four unconstitutional charges and, perhaps, not on that of the indictment as it was returned by the grand jury." *Id*. at 15.

As noted by the Government, Defendant filed a direct appeal, and "Defendant's fourth claim is the very claim litigated before the Tenth Circuit and resolved adversely against him." [CR Doc. 88 at 7]. "Absent an intervening change in the law of a circuit, issues disposed of on direct appeal generally will not be considered on a collateral attack by a motion pursuant to § 2255." *United States v. Prichard*, 875 F.2d 789, 791 (10th Cir. 1989) (citing *United States v. Nolan,* 571 F.2d 528, 530 (10th Cir. 1978)). Defendant does not identify any intervening change in law since his direct appeal was decided. His request for relief is denied.

A certificate of appealability may issue only if Defendant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). When a district court denies a § 2255 motion on procedural grounds without reaching the merits of a defendant's claims, a certificate of appealability should issue when a defendant "shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional

right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a district court denies a § 2255 motion on the merits, a defendant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* Upon consideration, this court finds that the standard has not been satisfied. This court hereby declines to issue a certificate of appealability.

Defendant's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence [CR Doc. 83; CV Doc. 1], as supplemented [CR Doc. 89], is hereby DENIED.[1] Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings, this court hereby declines to issue a certificate of appealability.

It is so ordered this 15th day of December, 2023.

_____
THE HONORABLE RONALD A. WHITE
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF OKLAHOMA

---

[1] The motion, files and records of this case conclusively show that Defendant is entitled to no relief. Thus, no evidentiary hearing was held.